IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN O'BRIEN, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 12-6690 |
| CAROLYN W. COLVIN, : | |
| Acting Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**MEMORANDUM**

RONALD L. BUCKWALTER, S.J.                                                                 September 16, 2014

Currently pending before the Court are Plaintiff Shawn O'Brien's Objections to the Report and Recommendation of United States Magistrate Judge Lynne A. Sitarski.  For the following reasons, the Objections are denied.

**I.       PROCEDURAL HISTORY**

On July 27, 2010,  Plaintiff Shawn O'Brien, then thirty-three years old, filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, et seq.  (R. 123–24.)[1]   His claim alleged disability since November 4, 2008, due to degenerative joint disease of the left shoulder and left shoulder pain.  (Id. at 135, 167, 216–17.)  The state agency denied Plaintiff's application on November 1, 2010.  (Id. at 70–81.)  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  (Id. at

---

[1]  For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

82–83.) Following the hearing—at which Plaintiff, his wife, and a vocational expert testified—ALJ Jennifer Lash issued a decision, dated July 22, 2011, deeming Plaintiff "not disabled." (Id. at 15–23, 27–65.) Plaintiff then filed an appeal and supporting brief. (R. 9–11.) On October 5, 2012, the Appeals Council denied Plaintiff's request for review, (id. at 1–3), making the ALJ's ruling the final decision of the agency. See 20 C.F.R. § 404.972.

Plaintiff initiated the present civil action in this Court on November 30, 2012. His Request for Review set forth four alleged errors as follows: (1) the ALJ failed to give proper weight to statements from Plaintiff's treating physician; (2) the ALJ failed to give proper weight to Mr. and Mrs. O'Brien's testimony; (3) the ALJ improperly found that Plaintiff does not meet or equal Listing 1.02; (4) the ALJ's finding that Plaintiff can engage in substantial gainful employment is not supported by substantial evidence. On June 13, 2014, United States Magistrate Judge Lynne A. Sitarski issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied and that judgment be entered in favor of Defendant.

Plaintiff filed Objections to the R&R on June 25, 2014, asserting that: (1) the ALJ failed to assign proper weight to the treating physician's statements; (2) the ALJ's credibility determination is inconsistent with the evidence of record; (3) the ALJ erred by substituting the treating physician's judgment with her own judgment as to whether Plaintiff meets or equals Listing 1.02; and (4) the ALJ erred by basing her decision as to past relevant work on defective hypothetical questions that did not accurately reflect Plaintiff's actual conditions. Defendant submitted a Response to the Objections on July 3, 2014, making this matter ripe for judicial review.

## II. STANDARD OF REVIEW[2]

### A. Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)). When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence. Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B. Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de

---

[2] The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge. In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

## III. DISCUSSION

### A. Duplicative Objections

The substance of Plaintiff's four Objections present the identical four issues raised in the Request for Review. To the extent Plaintiff makes arguments duplicative of those presented to the Magistrate Judge, the Court deems them improper under the Federal Rules of Civil Procedure and declines to review them.

Federal Rule of Civil Procedure 72 provides that a party may serve and file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72. Local Rule of Civil Procedure 72.1 goes on to indicate that such written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." E.D. Pa. R. 72.1(IV)(b). In other words, an objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge. As succinctly explained by one federal district court:

> If the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel,

> consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law . . ." The federal procedural scheme thus calls for rifle-shot objections, and its legitimate purposes are frustrated by a vague gunshot blast . . .

Sackall v. Heckler, 104 F.R.D. 401, 402–03 (D.R.I. 1984); see also Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984) ("We are satisfied that providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process."). Thus, if objections to a report "merely reiterate arguments previously raised before a magistrate judge, *de novo* review is not required." Palmer v. Astrue, No. Civ.A.09-820, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010); see also Riley v. Barnhart, No. Civ.A.05-5731, 2010 WL 1186314, at *2 (E.D. Pa. Mar. 25, 2010) (holding that '[i]nasmuch as Plaintiff herein has failed to '. . . identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge,' he is not entitled to further review of these issues"); Moran v. Astrue, No. Civ.A.08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (noting that an objecting party must do more than "simply rehash[ ] arguments already raised to the magistrate judge" to obtain *de novo* review).

Repeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review. See, e.g., Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993) (holding that "[a]lthough [petitioner] filed written objections to the magistrate's findings, these objections consisted solely of a copy of the brief filed to support the original habeas petition to

the district court. [Petitioner] thus did not raise a factual objection by merely rearguing arguments contained in the original petition"); Palmer v. Astrue, No. Civ.A.09–820, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010) ("If . . . objections to a Report merely reiterate arguments previously raised before a magistrate, de novo review is not required."); Nghiem v. Kerestes, No. Civ.A.08–4224, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in additional review of objections where the objections merely re-articulated all the claims and theories for relief that were addressed and dismissed by the magistrate judge), aff'd, 410 F. App'x 490 (3d Cir. 2011); King v. Caruso, 542 F. Supp. 2d 703, 706 (E.D. Mich. 2008) ("[I]f the 'objection' merely states a disagreement with the magistrate's suggested resolution or summarizes what was brought before the magistrate, it is not an objection for purposes of this review."); Smith v. City of N. Charleston, 401 F. Supp. 2d 530, 533 (D.S.C. 2005) (holding that objections to a magistrate judge's report and recommendation that consisted of rehashing the arguments made to the magistrate judge did not warrant de novo review since they did not cite specific conclusions of the report that were erroneous); Betancourt v. Ace Ins. Co. of P.R., 313 F. Supp. 2d 32, 34 (D.P.R. 2004) (finding that where objections are an "exact duplicate" of arguments raised to the magistrate judge, the objections "do not reflect an understanding that a plaintiff may not simply restate the arguments that the Magistrate Judge considered and expect the Court to treat the filing seriously"); Sanford v. Principi, No. Civ.A.00–502, 2002 WL 32334396, at *1 (S.D. W.Va. Sept. 26, 2002) (holding that objections that fail to direct the district court to any specific error by the magistrate judge do not trigger de novo review because such objections "prevent[ ] the district court from focusing on disputed issues and thus render[ ] the initial referral to the magistrate judge useless"), aff'd, 60 F. App'x 473 (4th Cir. 2003);

Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (stating that it is "improper . . . to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge").

In the present case, Plaintiff's Objections suffer from this precise defect. His brief in support rehashes, in a substantially verbatim manner, the Memorandum presented to the Magistrate Judge. To now re-address these identical arguments would duplicate the thorough efforts of the Magistrate Judge and defeat any judicial efficiency gained by the report and recommendation process. As this Court finds no clear error or manifest injustice in the R&R, we decline to consider those portions of the Objections that duplicate the Request for Review.[3] To the extent Plaintiff raises additional arguments, however, the Court will address them.

**B. Whether the Magistrate Judge Erred Affirming the ALJ's Failure to Assign Proper Weight to Plaintiff's Treating Physician**

As he did in his Request for Review, Plaintiff again argues that the ALJ failed to assign proper weight to his treating physician, Dr. Sing. Addressing only the non-duplicative arguments in the Objections, the Court must disagree.

Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating

---

[3] The Court notes that the following pages of Plaintiff's brief in support of his Objections are nothing more than a verbatim rehash of his Request for Review: 3–5, 7–9, 13, and 15. The Court will not reconsider the arguments on these pages.

source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The factors to be considered in assigning the appropriate weight to a medical opinion include: length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. § 416.927(c)(2).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000) (quotations omitted). Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted). At the end of the analysis, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2000).

As more fully set forth by the R&R, the ALJ properly rejected Dr. Sing's statements that Plaintiff is "disabled," "unable to work," and cannot perform a past job, because such statements are not medical opinion but rather administrative findings requiring familiarity with Social Security regulations and legal standards. (R. 21.) In addition, the ALJ found Dr. Sing's opinions not supported by the physical examinations in this case and not consistent with the claimant's own reports of his daily activities. The Magistrate Judge subsequently deemed this assessment to be well supported by substantial evidence, noting that (1) Dr. Sing's opinion that Plaintiff's injuries in his left shoulder "preclude him from using his entire upper extremity" were contradicted by physical examinations consistently showing that Plaintiff had full grip strength; (2) Dr. William Emper, Plaintiff's treating orthopedic surgeon, noted that Plaintiff's strength was 4/5 and opined that Plaintiff could return to "light duty, clerical work;" (3) in October 2010, a consultative examination done by Dr. Merrill Mirman revealed that Plaintiff was able to lift and carry a twenty-two pound stool for approximately four meters and that he had full grip strength in both hands; and (4) Dr. Sing's examination notes are devoid of any indication that Plaintiff is unable to use his left arm.

Plaintiff now takes issue with some of the Magistrate Judge's statements made with respect to the ALJ's analysis of this issue. First, Plaintiff argues that "[w]hile arguably some doctors believe that Mr. O'Brien can grip objects, his shoulder pain prevents him from doing anything with the object after he grips it because his range of motion in his shoulder is substantially limited." (Pl.'s Objections 5.) As such, he reasons that, contrary to the Magistrate Judge's assertion, Dr. Sing's opinion is not undermined by the grip strength notations. The Court finds this argument—which is devoid of any citation to the record or legal

9

authority—unconvincing. Dr. Sing stated that Plaintiff's left shoulder injuries "preclude him from using his entire left upper extremity." (R. 637.) Gripping, however, by its very nature requires use of an upper extremity. Multiple record findings that Plaintiff retained substantial grip strength therefore undermine an opinion that Plaintiff could not use his upper left extremity. Moreover, Plaintiff concedes that, as of October 2010, Plaintiff was able to lift and carry a stool weighing twenty-two pounds for four meters. Accordingly, neither the Magistrate Judge nor the ALJ improperly relied on this inconsistency.

  Second, Plaintiff argues that the ALJ erred in giving greater weight to the consultative examiner's opinion because it was issued prior to Dr. Sing's opinion. Specifically, he contends that: "[t]he ALJ determined that Mr. O'Brien had a degenerative condition which means that Mr. O'Brien's condition and pain would only worsen over time. . . . Dr. Sing's report was issued in June 2011, the same month that the hearing was held. . . . It represents the most recent assessment of Mr. O'Brien's condition, and it specifically indicates that Mr. O'Brien's condition is 'worsening.' . . . the consultative examiner's report, however, was issued in October 2010, almost a year before the ALJ's decision." (Pl.'s Objections 5–6.) Plaintiff then goes on to argue that, in relying on the consultative examiner's earlier opinion over that of Dr. Sing, the ALJ failed to explain why Plaintiff's degenerative shoulder condition would not have worsened between the consultative examination and Dr. Sing's June 2011 report.

  Notably, however, Dr. Sing's last examination of Plaintiff was not in June 2011, but rather on April 21, 2011, two months prior to his report and only six months after the consultative examiner's opinion. As of the last treatment notes, Dr. Sing noted "limited" range of motion and remarked that left grip was "intact." (R. 583–87.) This was consistent with the

consultative examiner's findings on examination of significantly limited range of motion in the left upper extremity with fully intact grip strength. (R. 523.) The main difference between the two doctors is that Dr. Sing offered a legal opinion, two months after his last examination, that Plaintiff was disabled and unable to work, while the consultative examiner provided only a medical opinion that Plaintiff had severe limitations in his left upper extremity, but still maintained other physical and cognitive abilities. (R. 524–25.) "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011) (citing Adorno v. Shalala, 40 F.3d 43, 47–48 (3d Cir. 1994) (providing that "a statement by a plaintiff's treating physician supporting an assertion that [plaintiff] is disabled or unable to work is not dispositive of the issue" (internal quotation marks omitted))). As such, the ALJ's adoption of the consultative examiner's identified limitations on Plaintiff's abilities, but rejection of Dr. Sing's opinion as to Plaintiff's vocational abilities, is consistent with Social Security jurisprudence and well supported by substantial evidence.

In short, the Court finds no error in the ALJ refusal to accord controlling weight to Dr. Sing's letter opinions of June 14 and June 21, 2011. Accordingly, this Objection is overruled.

### C. Whether the Magistrate Judge Erred in Affirming the ALJ's Refusal to Afford Full Credibility to Plaintiff's Testimony

Plaintiff next challenges the ALJ's assessment of his credibility. Again disregarding the verbatim arguments already addressed by the Magistrate, the Court finds no merit to Plaintiff's Objections.

It is well established that an ALJ is required to "give serious consideration to a claimant's

subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).  Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them.  Green v. Schweiker, 749 F.2d 1066, 1070–71 (3d Cir. 1984). Where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68 (quotations omitted).  The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)).

      Under the regulations, the kinds of evidence that the ALJ must consider when assessing the credibility of an individual's statements include: the individual's daily activity; location, duration, frequency, and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).  Moreover, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints.  Weber, 156 F. Supp. 2d at 485 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996)).

Ultimately, the ALJ's "'determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" Schwartz v. Halter, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p; Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999)).

>The ALJ provided an extensive credibility analysis as follows:
>
>It is acknowledged that the claimant has a severe impairment which causes significant limitations on his ability to perform work-related activities. However, having reviewed the record in its entirety, I have reservations as to whether the claimant's assertions concerning his impairments, and their impact on his ability to work, can be considered fully creditable. The record does not support a conclusion that the claimant's impairment is as limiting as his hearing testimony indicates.
>
>The record shows that claimant's treatment, including physical therapy and medications "allows for daily functioning" and provides relief of pain . . . . This is reported consistently throughout the treatment record. There is nothing to show that the claimant is limited in his lifting and carrying with his right arm, and he was able to lift and carry a 22-pound stool at the time of the consultative examination in October 2010 . . . . Although the claimant testified that he rarely uses his left arm, the consultative examiner did not note any atrophy in that arm at that time. If the claimant never uses his left arm, it would be expected that there would be repeated references to atrophy in the record; however, other than a reference to left shoulder girdle atrophy in July 2009 . . . and a current reference in March 2011, . . . the record only documents painful range of motion. The claimant's left grip strength is intact, and there is no evidence of sensor or motor loss. Furthermore, the record reveals no significant evidence of an impairment which would affect the claimant's ability to stand and walk.
>
>It is acknowledged that this is a "pain case" and thus the record and the claimant's daily activities must be examine[d] to ascertain if there is evidence of pain severe enough to preclude substantial gainful activity. As noted above, the records of the claimant's treatment indicate that the claimant obtains significant pain relief with his medications. The claimant did testify that his medications help alleviate the pain. Although the claimant testified that he gets drowsy from his medications, the record shows that he is tolerating his treatment well . . . . Drowsiness often accompanies the

> taking of pain medication, but it should not be viewed as disabling unless the record references serious functional limitations because of the drowsiness. . . .
>
> The claimant has also reported a significant range of daily activities . . . . He is able to drive several times a week to his treatment and to the store. He uses the computer and is able to play chess and other video games. He can make meals using the microwave and do some shopping. He uses a cell phone and is able to text. I note that these activities of daily living call into question the claimant's allegations concerning his functional limitations and also tend to negate the conclusion that the claimant has disabling pain, fatigue, or other physical symptoms. It is also noted that the claimant has not sought shoulder replacement surgery which was offered if the claimant's pain were not controlled by other methods. . . .
>
> While I understand that the claimant may not be able to do many of the things that he used to do, the totality of the evidence fails to support the existence of a totally disabling impairment. To the extent that the claimant alleges being totally precluded from work-related activities, these subjective complaints regarding the severity of limitations caused by his impairments are considered not fully credible and not supported by the medical evidence.

(R. 20.)

On review, the Magistrate Judge found that the ALJ properly evaluated Plaintiff's credibility according to the dictates of the regulations and appropriately accorded little weight to Plaintiff's subjective complaints of pain. Specifically, the Magistrate Judge remarked that the ALJ found that Plaintiff had a severe impairment that caused significant limitations in his ability to perform work-related activities. (R&R 10.) Nonetheless, the ALJ went on to find that the degree of limitation testified to by Plaintiff was not supported by the evidence of record. (R. 10.) The Magistrate Judge noted that, in doing so, the ALJ properly considered the factors deemed relevant by the regulations, including: Plaintiff's physical therapy treatment notes, the consultative examination, the effects of Plaintiff's pain medications, reported daily activities, and possible treatments that could have helped Plaintiff's pain. Ultimately, the Magistrate Judge concluded that "the ALJ properly considered Plaintiff's subjective complaints of pain, provided

specific reasons for rejecting the complaints, and supported her conclusion that the pain was non-disabling with the objective medical evidence in the record.  The ALJ was entitled to reject Plaintiff's subjective complaints of pain on the basis that her complaints were contradicted by the other evidence in the record." (R&R 14.)

Plaintiff puts forth several challenges to the ALJ's analysis and the Magistrate's concurrence.  First, he takes issue with the ALJ's statement that "claimant's treatment, including physical therapy and medications 'allows for daily functioning.'"  (R. 20.)  Plaintiff asserts that this statement is—without elaboration—too vague to be meaningful or helpful and that references to treatment that allows for "daily functioning" are not necessarily inconsistent with Plaintiff's administrative hearing testimony.  He reasons that mere ability to carry a twenty-two pound stool for four meters during the consultative examination does not undermine his complaints of pain radiating from his left shoulder across his upper body.  Accordingly to Plaintiff, his normal daily function is significantly more limited.

Contrary to Plaintiff's argument, however, the ALJ did provide further elaboration by noting that nothing in the record shows that Plaintiff is limited in lifting and carrying with his right arm as evidenced by his ability to carry the stool,[4] restricted in his ability to stand and walk, or suffering from sensory or motor loss.  Moreover, the ALJ's comment about treatment and medication allowing for daily functioning was reflected in multiple medical records, including

---

[4] Plaintiff asserts that because he has a degenerative joint disease, "common sense dictates that this activity would aggravate [his] severe pain and degenerative joint disease." (R. 11.)  The ALJ, however, only relied on this particular notation about carrying a stool to demonstrate that Plaintiff retained some lifting and carrying ability, at least with his right arm. (R. 20.)  Plaintiff has produced no evidence that his degenerative condition affects his right arm in any fashion.

treatment records from Dr. Sing. (See, e.g., R. 247 (September 17, 2010 note that Plaintiff was tolerating treatment well; PENS provides relief, and meds allow for daily function; September 22, 2010 note that treatment allows for daily function; R. 249 (August 18, 2010 note that Plaintiff "tolerated tx's well today" and medications continue to allow for daily function); R. 583 (April 17, 2011 note that therapy and medication help with pain); R. 589 (February 21, 2011 note that medications allow for daily functioning).) Even Plaintiff stated to the consultative examiner that his symptoms decrease with medication. (R. 518.) While the bounds of the allowed "daily functioning" remain somewhat unclear, the ALJ was justified, under the regulations, in relying on notations that daily functioning is possible in order to discredit Plaintiff's statements that he suffers from completely "disabling" pain, fatigue, or other physical symptoms. 20 C.F.R. § 404.1529(c)(3).

Second, Plaintiff asserts that the Magistrate Judge improperly relied on Ethridge v. Astrue, No. Civ.A.11-543, 2012 WL 1428892 (W.D. Pa. Apr. 24, 2012), in concluding that Plaintiff's grip strength was inconsistent with his subjective assessments of pain. Plaintiff contends that Ethridge is distinguishable because the plaintiff in that case only experienced episodic shoulder pain, underwent relatively conservative treatment, and had significant gaps in his treatment, whereas Plaintiff has constant pain, receives substantial treatment including narcotic medication, therapy sessions, and nerve stimulation, and treats on a daily basis with Oxycodone and Oxycontin. (Pl.'s Objections 11.)

Notably, however, the Magistrate Judge only relied on Ethridge to indicate why the ALJ's reference to Plaintiff's continuously intact grip strength and successful pain medication regime —both of which were identified in Dr. Sing's notes—were a proper basis for the ALJ's

16

discrediting Dr. Sing's legal conclusion of disability.  The case was never cited in reference to the propriety of the ALJ's credibility determination.  More importantly, this was a case relied on by the Magistrate Judge, not the ALJ.  As this Court has already found that the ALJ's weighting of Dr. Sing's opinion was proper, any distinctions between Ethridge and the present case are irrelevant.

      Finally, Plaintiff contends that the ALJ erroneously based her credibility assessment on her conclusion that Plaintiff reported a significant range of daily activities.  He goes on to assert that his minimal daily activities—using the computer for email and to play chess, playing video games, using the microwave, and using his cell phone—are predominantly sedentary activities which do not constitute substantial evidence sufficient to disbelieve his pain testimony.  On this point, the Court agrees that Plaintiff's range of daily activities is not, as the ALJ termed it, "significant."  Indeed, "[a]ctivities of daily living are often not substantial evidence in the record to discount a claimant's testimony, and the ALJ should proceed with caution in relying upon them to discredit a claimant."  Stewart v. Astrue, 551 F. Supp. 2d 1308, 1321 (N.D. Fl. 2008). Nonetheless, it appears as though the ALJ relied on these activities not to totally discredit Plaintiff, but merely to call into question Plaintiff's claims of completely disabling pain and fatigue.  Moreover, and more importantly, as thoroughly set forth in the Report and Recommendation, the ALJ did not rely solely on these activities, but also discussed Plaintiff's physical therapy treatment notes, the consultative examination, the effects of Plaintiff's pain medications, and possible treatments that could have helped Plaintiff's pain but which he did not pursue.  To that end, any mischaracterization of the strenuousness of Plaintiff's daily activities is, at most, harmless error that does not require remand.  See Rutherford v. Barnhart, 399 F.3d 546,

553 (3d Cir. 2005) (holding that where there is error by the ALJ, but the error would not affect the outcome of the case, remand is not warranted).

Overall, considering only the new arguments raised by Plaintiff in his Objections, the Court finds that the ALJ's credibility determination is well supported by substantial evidence. Accordingly, Plaintiff's Objection on this point is denied.

### D.     Whether the Magistrate Judge Improperly Found that the ALJ's Listings Determination Was Supported by Substantial Evidence

Plaintiff's next Objection concerns the ALJ's determination that Plaintiff's disability did not meet or equal Listing 1.02. The majority of this argument duplicates what was before the Magistrate Judge and the Court finds no clear error in the R&R. Plaintiff, however, raises one new argument which the Court considers. Specifically, Plaintiff asserts that the ALJ placed too much weight on the lack of references to atrophy in the medical records and concluded that more references to atrophy were necessary to substantiate his subjective complaints.

Notably, however, the ALJ never referenced the lack of atrophy in her Listings assessment. Rather, she properly observed that, under the Social Security regulations, Listing 1.02 requires that the major dysfunction involve one major peripheral joint in *each* upper extremity. (R. 18.) She then went on to note that although Plaintiff has pain and restriction in range of motion in his left shoulder, he retains full grip strength bilaterally and treatment allows for daily functioning. (Id. at 18–19.) The comments regarding lack of atrophy were not made until the credibility determination and, thus, were not part of the ALJ's reasoning in finding that Plaintiff did not meet or equal a Listing. Therefore, the Court denies this Objection as well.

### E. Whether the Magistrate Judge Improperly Affirmed the ALJ's Reliance on Defective Hypothetical Questions Posed to the Vocational Expert

Plaintiff's final Objection asserts that the Magistrate Judge posed a defective hypothetical question to the vocational expert ("VE") and then relied on that answer to find that Plaintiff could perform other work in the national and regional economies. More precisely, the ALJ posed four hypothetical questions to the VE: one relying on Dr. Sing's evaluation and limiting Plaintiff to no pushing, pulling, or reaching, and no use of the left hand at all; one lessening the restriction on the left arm to include an individual who could only occasionally use the upper left extremity; one allowing Plaintiff to push, pull, and reach occasionally with the left upper extremity; and one where Plaintiff would have the same limitations, but also require unscheduled fifteen minute breaks throughout the day. With respect to the first and fourth hypotheticals, the VE found no unskilled work at the light activity range level. With respect to the second and third hypotheticals, however, the VE identified several different available jobs. Plaintiff now argues that any hypothetical that included *any* pushing or pulling with the upper left extremity was defective and, therefore, could not support a finding of not disabled.

Plaintiff's argument, aside from being an almost verbatim duplicate of what was presented to the Magistrate Judge, is nothing more than an alternative means of rearguing in favor of the limitations imposed by Dr. Sing. As noted in great detail above, however, the ALJ's decision to not fully adopt Dr. Sing's assessment of Plaintiff's abilities was well supported by substantial evidence. In addition, the ALJ cited to significant evidence that Plaintiff retained grip strength in his left hand and that both medication and physical therapy helped control the pain. In order for a vocational expert's answer to a hypothetical question to be considered substantial

evidence, the question must reflect all of a claimant's impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The law does "not require an ALJ to submit to the vocational expert every impairment alleged by a claimant," but does require that the hypothetical "accurately convey to the vocational expert all of a claimant's credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (quotations omitted) (emphasis in original). As the second and third hypotheticals were both supported by substantial evidence and accurately reflect Plaintiff's impairments as established by the record, the ALJ was justified in relying on the VE's answers to those hypotheticals in order to find that Plaintiff was not disabled. Accordingly, the Court denies this Objection.

### IV.    CONCLUSION

In addressing Plaintiff's Objections, the Court has given the Plaintiff significant leeway to re-raise issues that, for all intents and purposes, were previously raised before and thoroughly addressed by the Magistrate Judge in her Report and Recommendation. The Objections themselves do nothing more than expand upon the identical arguments already dealt with and rejected. Nonetheless, even considering the additional reasoning offered by Plaintiff in his Objections, the Court agrees with the Magistrate Judge's recommendation that the ALJ's decision is supported by substantial evidence and should be affirmed. As such, the Court will adopt the Report and Recommendation in its entirety. An appropriate Order follows.